IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TULANI HASAN,

    Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner,
Social Security Administration,

    Defendant.

Civil Action No. ADC-16-3928

## MEMORANDUM OPINION

On December 8, 2016, Tulani Hasan ("Plaintiff") petitioned this court to review the Social Security Administration's ("SSA") final decision to deny her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 (the "Complaint"). After consideration of the Complaint, the parties' cross-motions for summary judgment (ECF Nos. 14 and 25), and the supplement and response thereto (ECF Nos. 20 and 24), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 25) is GRANTED, and the decision of the SSA is AFFIRMED.

### PROCEDURAL HISTORY

Alleging disability beginning on January 1, 2009, Plaintiff filed a Title II application for a period of disability and DIB and a Title XVI application for SSI on January 6 and 9, 2012, respectively. Her claims were denied initially and upon reconsideration on January 1 and

December 6, 2012, respectively. Subsequently, on February 14, 2013, Plaintiff filed a written request for a hearing and, on December 12, 2013, a hearing was held before an Administrative Law Judge ("ALJ"). On February 25, 2014, the ALJ rendered a decision ruling that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act"). Plaintiff appealed the decision to the Appeals Council.

On May 7, 2015, the Appeals Council remanded the case back to the ALJ in order to obtain additional evidence concerning Plaintiff's psychiatric impairments, including evidence from a medical examiner regarding the nature and severity of such impairments, further consider Plaintiff's maximum "residual functional capacity" ("RFC"), and obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base. Plaintiff appeared at a second hearing before the ALJ on September 21, 2015, during which she amended the onset date of her disability to December 8, 2011, and the ALJ rendered a decision ruling that Plaintiff "ha[d] not been disabled within the meaning of the [Act] at any time from the alleged onset date through the date of this decision." ECF No. 11 at 49. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on October 21, 2016, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481 (2017); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On December 8, 2016, Plaintiff filed the Complaint in this Court seeking judicial review of the Commissioner's denial of Plaintiff's disability application.[1] On April 24, 2017, Plaintiff filed a Motion for Summary Judgment. On June 15, 2017, Plaintiff filed a supplemental

---

[1] On September 7, 2017, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

2

memorandum, which Defendant responded to on July 17, 2017. On August 8, 2017, Defendant filed a Motion for Summary Judgment. This matter is now fully briefed and the Court has reviewed Plaintiff's Motion for Summary Judgement, including the supplement and response thereto, and Defendant's Motion for Summary Judgment.

## STANDARD OF REVIEW

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the [Act], [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." (citations omitted)).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation

omitted); *see Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith*, 99 F.3d at 638. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Johnson*, 434 F.3d at 653 (internal citations omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such a severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the Commissioner, follows the five-step evaluation process outlined in

4

the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's RFC, which is then used at the fourth and fifth steps of the analysis. 20 C.F.R.

§ 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig*, 76 F.3d at 594; 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p, 1996 WL 374186, at *1–9 (July 2, 1996). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.*, at *5.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the

claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 8, 2011. ECF No. 11 at 33. At step two, the ALJ found that Plaintiff had the severe impairments of substance dependence, alcohol dependence, major depressive disorder, bipolar disorder, schizoaffective disorder, panic disorder, and obesity. *Id.* At step three, the ALJ determined that Plaintiff's impairments, including the substance use disorders, met the severity of the listed impairments in §§12.03, 12.04, and 12.09 of 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 35. The ALJ also determined that if Plaintiff stopped her substance use, she would continue to have severe impairments which would not meet or medically equal, on their own or in combination with other impairments, any of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 37. At step four, the ALJ determined that if Plaintiff stopped her substance abuse, she would have a RFC of "medium work" with some limitations and be unable to perform past

relevant work. *Id.* at 39, 47. Finally, at step five, the ALJ found that "if [Plaintiff] stopped the substance abuse, considering [Plaintiff]'s age, education, work experience, and [RFC], there would be a significant number of jobs in the national economy that [Plaintiff] could perform." *Id.* at 48. Accordingly, the ALJ concluded that "[b]ecause the substance use disorder is a contributing factor material to the determination of disability,[2] [Plaintiff] has not been disabled within the meaning of the [Act] at any time from the alleged onset date through the date of this decision." *Id.* at 49.

## DISCUSSION

Plaintiff raises two allegations of error on appeal: (1) that the ALJ failed to give the opinion of Plaintiff's treating physicians controlling weight without presenting contrary substantial evidence; and (2) that the ALJ failed to follow SSR 13-2p in finding that Plaintiff was disabled by substance abuse but not entitled to benefits. Each of Plaintiff's arguments lack merit and are addressed below.

### A. The ALJ Properly Weighed The Testimony Of Plaintiff's Treating Physicians In Making His Decision.

Plaintiff contends that the ALJ improperly considered the opinions of her three treating physicians: Dr. Juhi Nayeem, Ms. Joy Jeciede, and Dr. Jeffrey Hsu. ECF No. 14 at 20–22; *see generally* ECF No. 20. Regarding Dr. Nayeem, Plaintiff argues that the ALJ should have asked the treating psychiatrist to explain what she meant by marking a checkbox or whether she marked the checkbox in error and that the ALJ should have given greater weight to a handwritten note than to a checkbox on a form. ECF No. 14-1 at 21. In addition, Plaintiff opines that Dr. Nayeem's opinion is consistent with Ms. Jeciede and the consultative examiners and is not

---

[2] The ALJ determined that "[t]he substance use disorder is a contributing factor material to the determination of disability because [Plaintiff] would not be disabled if she stopped the substance use." ECF No. 11 at 49.

8

contradicted by clinical evidence or other substantial evidence. *Id.* at 21–22. Regarding Ms. Jeciede and Dr. Hsu, Plaintiff contends that the ALJ erred in giving a non-examining disability determination service evaluator more weight than two treating physicians who examined Plaintiff personally. *Id.* at 21.

Under the treating physician rule, an ALJ must generally give a treating physician's opinion "more weight . . . since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "When the treating source has seen [the patient] a number of times and long enough to have obtained a longitudinal picture of [the patient's] impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence it should be afforded significantly less weight. *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927 (c)(2)).

Moreover, an ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give the treating physician's opinion: (1) the length and frequency of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the amount of evidence supporting the physician's opinion, (4) the consistency of the opinion with the record as a whole, (5) whether the physician is a specialist giving an opinion about his area of specialty,

and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)–(6). An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to the opinion. *Carter v. Astrue*, No. CBD-10-1882, 2011 WL 3273060, at *6 (D.Md. July 27, 2011). An ALJ is under no obligation to specifically enumerate each of the six factors described in the SSA regulations; the regulations require only that "good reasons" be provided for the weight given to a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c)(2); *see also Burch v. Apfel*, 9 F.App'x 255, 259 (4th Cir. 2001) (finding no error in an ALJ's decision to accord "little weight" to a treating physician's testimony where the ALJ considered "all the pertinent [regulatory] factors" without reciting each factor).

The ALJ explained his reasoning for affording little weight to the opinions of Plaintiff's treating psychiatrists:

> The undersigned affords little weight to the opinion of treating psychiatrist Dr. Nayeem. Dr. Nayeem noted that [Plaintiff] had extreme limitations in all of her functional capacities (except for her ability to maintain appropriate appearance) and that she was unfit to work because of trouble concentrating, voices telling her to do things, and fear she would hurt someone. This opinion contradicts Dr. Nayeem's own treatment records, which indicate that [Plaintiff] had appropriate thought content, was oriented, had no suicidal or homicidal ideation, had fair attention and concentration, and had no deficits in her memory. Dr. Nayeem further noted that these limitations would not exist in the absence of drug and alcohol use, meaning Dr. Nayeem's opinion is based on [Plaintiff] using drugs. While this opinion is generally consistent with the record as a whole, Dr. Nayeem submitted a second document just two weeks after her opinion stating that [Plaintiff] did not use drugs and her symptoms were not related to drug use. Essentially, Dr. Nayeem completely contradicts herself with these two statements made only two weeks apart. These opinions were also rendered after only seeing [Plaintiff] twice. As such, Dr. Nayeem's opinions are given little weight.

The undersigned also gives little weight to the opinion of (alleged) treating therapist Joy Jeciede, L.C.S.W. Ms. Jeciede believed [Plaintiff] had marked or extreme limitations in almost every functional category, including the ability to follow rules, relate to others, deal with instructions, and be emotionally stable. Ms. Jeciede also noted that [Plaintiff]'s symptoms severely limit her daily functioning, that they would be present even in the absence of drugs or alcohol, that [Plaintiff] could manage her own benefits, and that she had a GAF score of 50. In evaluating Ms. Jeciede's opinion as a non-acceptable medical source pursuant to SSR 06-3p,[ ]the undersigned notes that the record does not contain any treatment records from her treatment sessions [Plaintiff] says she attended. [Plaintiff] testified that she regularly saw Ms. Jeciede, but her documented history of missing therapy appointments, lack of documentation of other alleged treatment, and contradictory statements as described above do not lend credibility to this assertion in the absence of treatment records. The lack of treatment records also makes it impossible to evaluate the basis for Ms. Jeciede's opinion, including the number of times she has interacted with [Plaintiff]. As for the opinion itself, it is contradictory to indicate that [Plaintiff] has marked or extreme limitations in almost every functional ability but she is still able to manage her own benefits. This opinion is also inconsistent with other examiners who believed [Plaintiff] would be unable to manage her benefits. Further, Ms. Jeciede is not an acceptable medical source. Since Ms. Jeciede's opinion contradicts itself and is not corroborated by any of her treatment records, it is given little weight.

. . . .

The undersigned gives little weight to the opinion of psychiatrist Jeffrey Hsu, M.D. Dr. Hsu believed that [Plaintiff] could lift 10 pounds, had marked restrictions in her activities of daily living and social abilities, and a "frequent" limitation in her concentration, persistence that would limit her ability to work. He also gave [Plaintiff] a GAF score of 50. These opinions are remote in time, as they were rendered over two years before the amended alleged onset date. Additionally, Dr. Hsu gives no reasons for the physical limitation, except the inconsistent notation that [Plaintiff] had full strength. He also did not discuss the effect of [Plaintiff]'s drug use on her functioning ability. For these reasons, his opinions are given little weight.

ECF No. 11 at 45–46 (record citations omitted).

First, the ALJ properly considered that Dr. Nayeem's opinion, while being generally consistent with other evidence in the record, also contained some inconsistencies from her own treatment records regarding the effect of Plaintiff's drug use on her limitations. *Id.* at 45. The ALJ also noted that Dr. Nayeem's opinion was only based on two appointments. *Id.* The SSA regulations permit an ALJ to give less weight to a treating physician opinion where the physician has seen the claimant only a few times or where the physician has less knowledge about the claimant's impairments. *See* 20 C.F.R. §§ 404.1527(c)(2)(i)–(ii), 416.927(c)(2)(i)–(ii); *see also Ingram v. Astrue*, No. SKG-11-1729, 2013 WL 1175444, at *12 (D.Md. Mar. 20, 2013) (holding that the ALJ properly gave little weight to a treating source's opinion where the treating source had met with the claimant on only four occasions, which the Court characterized as "the beginning of a treatment regime").

Second, the ALJ explained his issues with Ms. Jeciede's opinion. The ALJ found that the lack of treatment records made it impossible to evaluate the basis of Ms. Jeciede's opinion and to determine the number of times she saw, treated, or interacted with Plaintiff. The ALJ also properly considered that Ms. Jeciede's opinion regarding Plaintiff's limitations was contradictory because Ms. Jeciede opined that Plaintiff had "marked or extreme limitations in almost every functional category," yet she believed that Plaintiff should manage her own benefits. ECF No. 11 at 45. The ALJ also noted how this opinion, in addition to contradicting Ms. Jeciede's opinion about Plaintiff's limitations, contradicted the opinions of other examiners. *Id.* Finally, the ALJ noted that Ms. Jeciede was not an acceptable medical source. *Id.* at 45–46.

Lastly, the ALJ properly reasoned that Dr. Hsu's opinion should be given little weight. The ALJ considered the remoteness of Dr. Hsu's opinion, which was rendered more than two years before Plaintiff's alleged disability onset date, how Dr. Hsu's opinion regarding Plaintiff's

physical limitations contradicted his statement that Plaintiff had full strength, and the absence of a discussion on the effect of Plaintiff's drug use on her functioning ability. *Id.* at 46. All of these considerations constituted good reason for the ALJ to give little weight to Dr. Hsu's opinion.

In summary, the Court finds that the ALJ's reasoning for giving the opinions of Plaintiff's three treating physicians little weight was fully articulated in the ALJ's written decision and supported by good reasons and substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d). Accordingly, the ALJ did not err in affording little weight to Plaintiff's treating physicians' opinions.

### B. The ALJ Properly Followed The Criteria In SSR 13-2p In Finding That Plaintiff Was Disabled By Substance Abuse But Not Entitled To Benefits.

Plaintiff contends that the ALJ failed to account for SSR 13-2p when the ALJ determined that Plaintiff abused drugs. ECF No. 14-1 at 23. Specifically, Plaintiff disputes that substantial evidence exists that Plaintiff used any illegal drugs after 2012 and that Plaintiff's limitations would not exist in the absence of substance abuse. *Id.* at 23–24. The Court disagrees.

"Sections 223(d)(2)(C) and 1614(a)(3)(J) of the [Act] provide that a claimant 'shall not be considered to be disabled…if alcoholism or drug addiction would…be a contributing factor material to the Commissioner's determination that the individual is disabled.'" SSR 13-2p, 2013 WL 621536, at *2 (Feb. 20, 2013) (alterations in original). The regulations "specify that alcoholism or drug addiction is a contributing factor material to a disability determination if an individual would not be disabled if he stopped using alcohol or drugs." *Mitchell v. Comm'r of the Soc. Sec. Admin.*, 182 F.3d 272, 274 n.2 (4th Cir. 1999). When an ALJ establishes that drug addiction and alcoholism is a medically determinable impairment and determines that a claimant is disabled considering all of the claimant's medically determinable impairments, the ALJ must

then determine whether the claimant would continue to be disabled if she stopped using drugs and alcohol; "that is, [the ALJ] will determine whether [drug addiction and alcoholism] is 'material' to the finding that the claimant is disabled." SSR 13-2p, at *2 (citing 20 C.F.R. §§ 404.1535, 416.935). The claimant bears the burden of proof on this issue. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d. Cir. 2012); *see also* SSR 13-2p, at *4. Further, all ALJs "must provide sufficient information in their determination or decision that explains the rationale supporting their determination of the materiality of [drug addiction and alcoholism] so that a subsequent reviewer considering all of the evidence in the case record is able to understand the basis for the materiality finding and the determination of whether the claimant is disabled." SSR 13-2p, at *2.

First, the ALJ's finding that Plaintiff had used drugs after 2012 is supported by substantial evidence in the record. Specifically, the ALJ referenced that Plaintiff used drugs in December 2011 and March 2012, that Plaintiff was taking Suboxone[3] in August 2014, and that a psychiatrist evaluated Plaintiff in August 2014 and recommended that Plaintiff attend substance abuse counseling. ECF No. 11 at 40–42. The ALJ also determined that Plaintiff's allegations that she had stopped abusing substances was not credible because the record showed that Plaintiff was still using substances at least until 2012 and had not been clean for five or six years as she testified, and therefore, the ALJ found that if Plaintiff stopped her substance use, her "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]

---

[3] "Suboxone contains a combination of buprenorphine (an opioid medication) and naloxone, which blocks the effects of the opioid medication. Subox[o]ne is used to treat narcotic (opioid) addiction." *Lee v. Md. Div. of Corr.*, No. CCB-16-439, 2017 WL 713760, at *3 n.3 (D.Md. Feb. 22, 2017).

14

assessment for the reasons explained in [its] decision." *Id.* at 43. Furthermore, the ALJ determined that "[a]lthough [Plaintiff's brother] is in a position to observe [her] more than anyone else in the record, his testimony about her drug use is inconsistent with her admitted use and positive tests until at least 2012." *Id.* at 45.

The record also contains substantial evidence that Plaintiff's limitations would not exist in the absence of substance abuse. Here, the ALJ found that if Plaintiff stopped the substance abuse, she would not be disabled, which meant that her substance use was a contributing factor material to the ALJ's disability determination. *Id.* at 49. In reaching this conclusion, the ALJ considered and discussed the extensive evidence in the record concerning Plaintiff's drug use problems. In particular, the ALJ determined that when Plaintiff was not using substances, she would have mild restrictions in her daily living activities, moderate difficulties in her social functioning, moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation. *Id.* at 37. In making these determinations, the ALJ relied on the testimony of Plaintiff, a consultative examining physician, Plaintiff's brother, Plaintiff's treating psychiatrists, and an evaluating physician and noted several examples to support his determinations. *Id.* 37–38. Thus, substantial evidence supports the ALJ's findings, and the Court must affirm the decision of the ALJ.

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within the meaning of the Act. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 14) is

DENIED, Defendant's Motion for Summary Judgment (ECF No. 25) is GRANTED, and the decision of the Social Security Administration is AFFIRMED. The clerk is DIRECTED to close this case.

Date: 25 September 2017

A. David Copperthite
United States Magistrate Judge